## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    )    Bankr. Case No. 06-10578
IN RE:                              )
                                    )    Chapter 11
WERNER HOLDING CO. (DE), INC., et al.,  )
                                    )    Jointly Administered
                                    )
            Debtors.                )    Doc. Ref. No. 18
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e), AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11
U.S.C. §363; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY
CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (IV) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 2002, 4001 AND 9014**

Upon the motion (the "**Motion**") of Werner Holding Co. (DE), Inc. (the "**Borrower**"),

and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"),

in the above-captioned cases (the "**Cases**") seeking, pursuant to sections 105, 361, 362,

363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States

Code, 11 U.S.C. §§101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local

Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"),

this Court's authorization:

       (a)    for the Borrower to obtain postpetition financing pursuant to (i) a
$24,000,000 Superpriority First Lien DIP Revolving Credit Facility (the "**Revolving DIP
Facility**") and (ii) a $75,000,000 Superpriority First Lien DIP Term Loan Facility (the "**Term
Loan DIP Facility**," together with the Revolving DIP Facility, the "**DIP Facility**" substantially
in the form attached hereto as <u>Exhibit 1</u> (excluding schedules and exhibits) and together with any
related documents or agreements, the "**DIP Documents**"), and for all of the other Debtors (the
"**Guarantors**") to guaranty the Borrower's obligations in connection with the DIP Facility up to
the aggregate principal amount of $99 million (the actual available principal amount at any time
being subject to the conditions set forth in the DIP Documents) from Black Diamond
Commercial Finance, L.L.C. ("**BDCF**"), acting as sole administrative agent, collateral agent,

bookrunner, lead arranger and documentation agent (collectively, in such capacities, the "**DIP Agent**") and Morgan Stanley Senior Funding ("Morgan Stanley") as syndication agent and a syndicate of financial institutions (together with the DIP Agent and Morgan Stanley, the "**DIP Lenders**"), with such DIP Facility:

        (i)      having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out (defined below);

        (ii)      being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtors including, but not limited to, Cash Collateral (defined below) (including cash contained in the Letter of Credit Account), inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual prperty and the proceeds of all the foregoing, but excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"),[1]

        (iii)      being secured, pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming liens on all property of the Debtors that is subject to (x) existing liens that secure the obligations of any kind of the Debtors under that certain Credit Agreement (the "**Senior Prepetition Credit Facility**") dated as of June 11, 2003, among the Borrower, the lenders party thereto (the "**Senior Prepetition Lenders**") and JPMorgan Chase Bank, N.A., as administrative agent (the "**Senior Prepetition Agent**") and the guarantees and other documents entered into by the Borrower and/or the other Debtors in connection therewith, as any of such documents may have been amended, modified, supplemented or refinanced, (collectively, the "**Senior Prepetition Credit Documents**"), (y) existing liens that secure the obligations of the Debtors under that certain Credit Agreement (the "**Junior Prepetition Credit Facility**") dated as of May 10, 2005, among the Borrower, the lenders party thereto (the "**Junior Prepetition Lenders**," together with the Senior Prepetition Lenders, the "**Prepetition Secured Lenders**") and Credit Suisse First Boston, as administrative agent (the "**Junior Prepetition Agent**" and together with the Senior Prepetition Agent, the "**Prepetition Agents**") and the guarantees and other documents entered into by the Borrower and/or the other Debtors in connection therewith, as any of such documents may have been amended, modified, supplemented or refinanced (collectively, the "**Junior Prepetition Credit Documents**" and together with the Senior Prepetition Credit Documents, the "**Prepetition Credit Documents**") and (z) any liens granted after the commencement of the Cases to provide adequate protection in respect of the Prepetition Credit Facilities; and

        (iv)      being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected junior security interests in and liens upon prepetition and

---

[1]      Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

postpetition property of the Debtors that is subject to valid and perfected liens in existence a the time of the commencement of the Cases (other than the liens granted pursuant to the Prepetition Credit Documents) or to valid liens in existence at the time of such commencement as permitted by Section 546(b) of the Bankruptcy Code.

(b)     for the Debtors to use the Cash Collateral pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other "Collateral" (as defined in the Prepetition Credit Documents) in which the Prepetition Secured Lenders have a lien or security interest (together with the Cash Collateral, the **"Prepetition Collateral"**) and provide adequate protection with respect to any diminution in the value of the Prepetition Secured Lenders' interests in the Prepetition Collateral resulting from the implementation of the DIP Facility and the priming of the Prepetition Agents' liens on the Prepetition Collateral to secure the DIP Facility set forth herein, the use of the Cash Collateral and the use, sale or lease by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the **"Interim Hearing"**) on this Motion for this Court to consider entry of an interim order annexed to the Motion (the **"Interim Order"**) (i) authorizing the Borrower, on an interim basis, to forthwith borrow from the DIP Facility up to the aggregate amount of $75 million from the DIP Lenders under the DIP Facilities, (ii) authorizing the use by the Debtors of Cash Collateral, and (iii) granting the adequate protection hereinafter described, and

(d)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the **"Final Hearing"**) for this Court to consider entry of a final order authorizing the balance of the DIP Facility on a final basis, as set forth in this Motion and the DIP Facility; and

(e)     the granting of certain related relief.

The Interim Hearing having been held by this Court on June _____, 2006 and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.* This Court has core jurisdiction over the Case, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on their thirty largest unsecured creditors, the Prepetition

3

Agents, the United States Trustee for the District of Delaware and certain other parties. Under the circumstances, such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2.

3.      *Objections*. All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4.      *Debtor's Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 19 below), the Debtors admit, stipulate and agree that:

(a)      as of the Petition Date, (i) the Debtors were truly and justly indebted and liable to (i) the Senior Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $100,000,000 in respect of loans made by the Senior Prepetition Lenders pursuant to, and in accordance with the terms of, the Senior Prepetition Credit Documents, plus, accrued and unpaid interest thereon and fees, expenses and other obligations incurred in connection therewith as provided in the Senior Prepetition Credit Documents and (ii) the Debtors were contingently liable to the Senior Prepetition Lenders , without defense, counterclaim or offset of any kind, in the aggregate face amount of approximately $28,000,000 on account of letters of credit issued pursuant to the Senior Prepetition Credit Documents, in each case as provided in the Senior Prepetition Credit Facility, (collectively, the "**Senior Prepetition Secured Obligations**"), and

(b)      as of the Petition Date, the Debtors were indebted and liable to the Junior Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $101,400,000 in respect of loans made by the Junior Prepetition Lenders pursuant to, and in accordance with the terms of, the Junior Prepetition

4

Credit Documents, plus, accrued and unpaid interest thereon and other obligations incurred in connection therewith as provided in the Junior Prepetition Credit Facility, (the "**Junior Prepetition Secured Obligations**," and collectively with the Senior Prepetition Secured Obligations, the "**Prepetition Secured Obligations**");

      (c)     the Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

      (d)     no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

      (e)     the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Agents, the Prepetition Secured Lenders and their affiliates, agents, officers, directors, employees, attorneys and advisors with respect to the Prepetition Secured Obligations; and

      (f)     the liens and security interests granted to the Prepetition Agents and the Prepetition Secured Lenders pursuant to and in connection with the Prepetition Secured Credit Documents (including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Secured Lenders) are (i) (x) in the case of the Senior Prepetition Agent, valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral and (y) in the case of the Junior Prepetition Agent, valid, binding, perfected, enforceable second priority liens on and security interests in the Prepetition

5

Collateral (collectively, the **"Prepetition Liens"**), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (x) after giving effect to this Order, the DIP Liens (as defined below), (y) after giving effect to this Order, the Carve Out (as defined below) and (z) valid, perfected and unavoidable liens permitted under the Prepetition Secured Credit Documents to the extent such permitted liens are senior to or *pari passu* with the liens of the Prepetition Agents and the Prepetition Secured Lenders on the Prepetition Collateral (the **"Permitted Prepetition Liens"**).

     5.    *Findings Regarding the DIP Facility.*

          (a)    Good cause has been shown for the entry of this Order.

          (b)    The Debtors have an immediate need to obtain the DIP Facility and use the Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to repurchase from Werner Funding the receivables that were previously sold to Werner Funding and to satisfy other working capital and operational needs. As a condition to any postpetition lending, the DIP Lenders require the Debtors to repurchase the receivables previously sold to Werner Funding. A loan facility in the amount provided by the DIP Facility that does not require a repurchase of the receivables previously sold to Werner Funding is not available to the Debtors. The Debtors' use of the Prepetition Collateral in general and access to the Cash Collateral specifically is necessary in order to ensure that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors' estates.

                           

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit with the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (defined below) under the terms and conditions set forth in this Order and in the DIP Documents.

(d)     The terms of the DIP Documents and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of Cash Collateral have been negotiated in good faith between the Debtors, the DIP Agent, the DIP Lenders and the Senior Prepetition Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all loans made to the Debtors pursuant to the DIP Facility (together with any other obligation arising under this Order or the DIP Documents, collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Facility is therefore in the best interest of the Debtors' estates.

6.      *Authorization of the DIP Documents.*

(a)     The DIP Documents are hereby approved as set forth in this Order and the Debtors are hereby authorized to borrow money pursuant to the DIP Documents and this Order, up to an aggregate principal or face amount of $75 million, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to pay interest, fees and expenses in accordance with this Order, to pay amounts approved by other Orders of this Court and to provide working capital for the Debtors; provided, however, pursuant to this Interim Order, the Debtors shall only pay $1,125,000 of the remaining Arrangement Fee, the balance of which shall be paid upon entry of the Final Order.

(b)     The Debtors are also hereby authorized and directed to repurchase from Werner Funding the receivables that were previously sold to Werner Funding and the DIP Agent and the DIP Lenders are hereby deemed to have consented to such repurchase.

(c)     In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including, without limitation:

8

(i) the execution, delivery and performance of the DIP Documents and any exhibits attached thereto, including, without limitation, the DIP Facility,

(ii) the execution, delivery and performance of one or more amendments to the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Documents that do not (i) shorten the maturity of the extensions of credit thereunder, (ii) increase the commitments, the rate of interest or the letter of credit fees payable thereunder, (iii) change any default or event of default, or add any covenants or amend the covenants therein to be more restrictive on the Debtors, (iv) amend any other term or condition if such amendment would confer additional rights on the DIP Agent or the DIP Lenders in a manner adverse in any material respect to the Prepetition Agents or the Prepetition Secured Lenders or (v) amend the notice provisions in Section 10.1 therein),

(iii) the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Documents and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents, and

(iv) the performance of all other acts required under or in connection with the DIP Documents.

(d) Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors

9

in accordance with its terms, including, without limitation, the Prepayment Premium as set forth therein. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)    For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) after the occurrence and during the

10

continuance of an Event of Default (as defined in the DIP Facility) an amount not exceeding $2,000,000 in the aggregate, which amount may be used subject to the terms of this Order, including, without limitation, paragraph 21 hereof, to pay any fees or expenses incurred by the Debtors and any statutory committees appointed in the Cases (each, a "**Committee**"), in respect of (A) the allowance of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or any Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members); *provided, however,* (x) that the dollar limitation in this clause 7(ii) on fees and disbursements shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the DIP Agent, DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders or their respective attorneys and agents under the DIP Documents, this Order or otherwise, (y) that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above, and (z) that cash or other amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

8.    *DIP Liens.*

As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Lenders (all

11

property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Facility, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Avoidance Actions, but shall, subject to the entry of the Final Order, include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions.

(b)    Liens Priming Prepetition Secured Parties' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of

12

subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Prepetition Secured Obligations. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Agents and the Prepetition Secured Lenders arising from current and future liens of the Prepetition Agents and the Prepetition Secured Lenders (including, without limitation, the Adequate Protection Liens (defined below)), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Agents and the Prepetition Secured Lenders become or became subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens (other than the liens granted on account of the Prepetition Secured Obligations, which shall be governed by paragraph 8(b) above) in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lenders are junior to such valid, perfected and unavoidable liens.

13

(d)  Liens Senior to Certain Other Liens. The DIP Liens and the Adequate Protection Liens (defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

9.  *Protection of DIP Lenders' Rights.*

(a)  So long as there are any borrowings or letters of credit or other amounts outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding), or the DIP Lenders have any Commitment (as defined in the DIP Facility) under the DIP Documents, the Prepetition Agents and Prepetition Secured lenders shall (i) take no action to foreclose upon or recover in connection with the liens granted pursuant to Prepetition Credit Facilities or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court and the Prepetition Agents hereby reserve the right to seek such relief, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents; provided that the Prepetition Agents and any Prepetition Secured Lender may appear and be heard as a party in interest in connection with any proceeding relating to the sale, transfer or other disposition of any Collateral and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless, solely as to this clause (iii), the

14

DIP Agent files financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence of an Event of Default and the giving of five (5) business days' written notice to the Debtors, the Prepetition Agents and the Committee as provided for in the DIP Facility, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Order or the DIP Documents. In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP Agent's or the DIP Lenders' failure to seek relief or otherwise exercise its rights and remedies under the DIP Facility or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise.

(c)     Entry of this Order shall be without prejudice to the right of the Prepetition Agents and the Prepetition Secured Lenders to seek relief in the Cases and to appear and be heard on matters before the Court.

15

10.    *Limitation on Charging Expenses Against Collateral.*

Subject to the entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of any of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lender.

11.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or Prepetition Agents on behalf of the Prepetition Secured Lenders pursuant to the provisions of this Order or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

12.    *Interest on DIP Obligations.*  Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP Documents.

13.    *Use of Cash Collateral.*  The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are

16

cash collateral of the Prepetition Secured Lenders within the meaning of Section 363(a) of the
Bankruptcy Code (the "**Cash Collateral**"). The Debtors are hereby authorized to use the Cash
Collateral of (i) the Senior Prepetition Agent and the Senior Prepetition Lenders and (ii) to the
extent that the value of the Prepetition Collateral exceeds the value of the Senior Prepetition
Secured Obligations, the Junior Prepetition Agent and the Junior Prepetition Lenders, and the
Prepetition Secured Lenders are directed promptly to turn over to the Debtors all Cash Collateral
received or held by them, *provided* that the Prepetition Secured Lenders are granted adequate
protection as hereinafter set forth. The Debtors' right to use Cash Collateral under this Order
shall terminate automatically on the Termination Date (as defined in the DIP Facility). The
Prepetition Secured Lenders have objected to the use by the Debtors of the Cash Collateral,
except on the terms of this Order.

14.    *Adequate Protection.* The Prepetition Secured Lenders are entitled, pursuant to
sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of
their interest in the Prepetition Collateral, in an amount equal to the aggregate diminution in
value of the Prepetition Secured Lenders' respective Prepetition Collateral, including, without
limitation, any such diminution resulting from the implementation of the DIP Facility and the
priming of the Prepetition Agents' liens on the Prepetition Collateral, the sale, lease or use by the
Debtors (or other decline in value) of the Prepetition Collateral, and the imposition of the
automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Adequate
Protection Obligations**"). As adequate protection, the Prepetition Agents and the Prepetition
Secured Lenders are hereby granted the following:

(a)    Adequate Protection Liens. To secure the Adequate Protection
Obligations, the Prepetition Agents (for themselves and for the benefit of the respective

17

Prepetition Secured Lenders) are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements or other agreements) a valid, perfected replacement security interest in and lien upon all the Collateral (the "**Adequate Protection Liens**"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the security interests and liens granted to the DIP Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral to which such liens so granted to the DIP Agent are junior and (iii) the Carve Out. The Adequate Protection Liens granted hereunder to the Junior Prepetition Agent for the ratable benefit of the Junior Prepetition Lenders shall be subject and subordinate to the Adequate Protection Liens granted hereunder to the Senior Prepetition Agent for the ratable benefit of the Senior Prepetition Lenders.

(b)     Section 507(b) Claim. The Adequate Protection Obligations shall constitute Superpriority Claims, subject and subordinate only to the payment of the Carve Out and the Superpriority Claims granted with respect to the DIP Obligations. Notwithstanding the foregoing, the Prepetition Agents and the Prepetition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the Superpriority Claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition Secured Credit Documents, but excluding any amounts payable or paid pursuant to this Order, unless and until the DIP Obligations have indefeasibly been paid in cash, in full. The Superpriority Claims granted hereunder to the Junior Prepetition Agent and the Junior Prepetition Lenders shall be subject and subordinate to the Superpriority Claims granted hereunder to the Senior Prepetition Agent and the Senior Prepetition Lenders.

(c)     Interest.  Consistent with the rights of holders of Prepetition Secured Obligations under section 506(b) of the Bankruptcy Code and in consideration of the entry of this Order notwithstanding the lack of adequate protection in the form of current cash payments to the holders of the Prepetition Secured Obligations, the claims of holders of Prepetition Secured Obligations for postpetition interest on the Prepetition Secured Obligations shall accrue and be allowed at the respective contractual rates (including the additional contractual default rates) set forth in each of the Prepetition Secured Credit Documents as applicable after an acceleration of the Prepetition Secured Obligations; provided that the rights of all parties to contest whether the value of the Prepetition Collateral exceeds the Prepetition Secured Obligations (but not the rates) are hereby fully preserved.

(d)     Fees and Expenses.  The Debtors are hereby authorized and directed to pay:

(i)     to the Senior Prepetition Agent, in cash, all agent and letter of credit fees, in each case as and when due and payable pursuant to the terms of the Senior Prepetition Credit Documents; and

(ii)     to each of the Prepetition Agents current cash payments of all reasonable fees and expenses (including the reasonable fees and disbursements of one lead and one local counsel and one financial advisor for each of the respective Prepetition Agents, which in the case of the Junior Prepetition Agent may include services provided by two counsels and one financial advisor to the ad hoc committee of Junior Prepetition Lenders) incurred in connection with the monitoring of the Cases or the enforcement and protection of the rights and interests of the Prepetition Agents and the Prepetition Secured Lenders in respect of the Adequate Protection Obligations and the Prepetition Secured Obligations, provided that the

19

rights of any party to assert that any such amounts paid pursuant to this clause (ii) should be applied to the reduction of principal under section 506(b) of the Bankruptcy Code are hereby fully preserved. None of the fees and expenses payable pursuant to this subparagraph (d) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.

(e)     Reporting and Right to Access. The Debtors shall provide the Prepetition Agents and the Prepetition Secured Lenders with copies of all reports, information and other materials delivered to the DIP Agent and the DIP Lenders and such other reports, information and materials as reasonably requested by the Prepetition Agents. In addition, the Debtors shall cooperate with and permit representatives of the Prepetition Agents to have reasonable access to their premises and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses).

15.     *Priorities Among Prepetition Secured Lenders.* Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Lenders (including, without limitation, the relative priorities and rights of the Prepetition Secured Lenders with respect to the Adequate Protection Liens and superpriority claims granted hereunder), such priorities and rights shall be governed by the Prepetition Secured Credit Documents, including the Intercreditor Agreement dated as of May 10, 2005 (as amended, supplemented or otherwise modified, the **"Prepetition Intercreditor Agreement"**) among the Senior Prepetition Agent, the Junior Prepetition Agent and the Debtors. Pursuant to the Prepetition Intercreditor Agreement, Junior Prepetition Agent, for itself and on behalf of the Junior Prepetition Lenders, agreed that (i) any replacement liens granted to the

20

Junior Prepetition Agent as adequate protection would be subordinated to the DIP Liens and the replacement liens granted to the Senior Prepetition Agent as adequate protection, (ii) any administrative expense claim granted to the Junior Prepetition Agent as adequate protection would be subordinated to the administrative expense claims granted to the DIP Lenders and the administrative expense claim granted to the Senior Prepetition Agent, (iii) it would not object to the Debtors' use of Cash Collateral or to post-petition financing having terms and conditions as contemplated by this Order and the DIP Credit Documents and (iv) it would not request adequate protection or any other relief in connection with the Debtors' entry into the DIP Facility or the use of the Cash Collateral, except as expressly agreed by the Senior Prepetition Agent or to the extent otherwise permitted under the Prepetition Intercreditor Agreement.

16.    *Sufficiency of Adequate Protection.*

The Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agents and the Prepetition Secured Lenders and is consistent with the provisions of the Prepetition Intercreditor Agreement. Notwithstanding any other provision hereof, the grant of adequate protection to the Senior Prepetition Agent and the Senior Prepetition Lenders pursuant hereto is without prejudice to the right of the Senior Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection (but excluding the current cash payment of interest), and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. The consent of the Senior Prepetition Agent and the Senior Prepetition Lenders to the priming of the Senior Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Facility authorized pursuant to this Order, and shall not extend to any other post-petition financing or to any modified version or

21

replacement of the DIP Facility and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Senior Prepetition Agent or the Senior Prepetition Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

       17.    *Perfection of DIP Liens and Adequate Protection Liens.*

       (a)     Subject to the provisions of paragraph 9(a) above, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders or Prepetition Agents on behalf of the Prepetition Secured Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.

       (b)     A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

22

(c)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agents all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agents may reasonably request to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or the Prepetition Secured Lenders in accordance with the terms of the DIP Documents or this Order.

18.     *Preservation of Rights Granted Under the Order.*

(a)     Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the DIP Agent and the Senior Prepetition Agent (and to the extent necessary under the Prepetition Intercreditor Agreement, the Junior Prepetition Agent), and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Senior Prepetition Agent, or (ii) an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in

23

accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims,
priming liens, security interests and replacement security interests granted to the DIP Agent or
the DIP Lenders, and, as applicable, the Prepetition Agents or the Prepetition Secured Lenders
pursuant to this Order, shall continue in full force and effect and shall maintain their priorities as
provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have
been paid and satisfied in full (and that such superpriority claims, priming liens and replacement
security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest)
and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of
enforcing the claims, liens and security interests referred to in clause (x) of this paragraph.

      (b)     If any or all of the provisions of this Order are hereafter reversed,
modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the
validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual
receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the
effective date of such reversal, modification, vacation or stay or (ii) the validity or enforceability
of any lien or priority authorized or created hereby or pursuant to the DIP Documents with
respect to any DIP Obligations or this Order with respect to any Adequate Protection
Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash
Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the
DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders prior to
the actual receipt by the DIP Agent or the Prepetition Agents of written notice of such reversal,
modification, vacation or stay shall be governed in all respects by the original provisions of this
Order, and the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured
Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section

24

364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superceding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full.

19.     *Effect of Stipulations on Third Parties.* The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors in all circumstances. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties in interest, including, without limitation, any Committee, unless (a) a party in interest (including

25

a trustee) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia,* in paragraph 21) by no later than the date that is the later of (i) 75 days after the entry of this Order, (ii) in the case of such an action being brought by a Committee, 60 days after the appointment of the statutory committee of unsecured creditors appointed in this Case, (iii) such later date as has been agreed to, in writing, by the (x) Senior Prepetition Agent in respect of challenges that may be initiated against the Senior Prepetition Agent or the Senior Prepetition Lenders or (y) the Junior Prepetition Agent in respect of challenges that may be initiated against the Junior Prepetition Agent or the Junior Prepetition Lenders, in each case in the sole discretion of the Senior Prepetition Agent and the Junior Prepetition Agent, as applicable, or (iv) as has been ordered by the Court (A) challenging the validity, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens on the Prepetition Collateral or (B) otherwise asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively, **"Claims and Defenses"**) against the Prepetition Agents or any of the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Prepetition Secured Credit Documents, the Prepetition Secured Obligations, or the Prepetition Collateral), and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed, (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and

26

any subsequent chapter 7 case, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to be legal, valid, binding, perfected and of the priority described in paragraph 4(f), not subject to recharacterization, subordination, avoidance or reduction and (z) the Prepetition Secured Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Agents and the Prepetition Secured Lenders shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of any of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 4 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), other than the statutory committee of unsecured creditors appointed in this Case standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Liens or the Prepetition Secured Obligations.

20.     *Waiver of Claims and Causes of Action Against the DIP Lenders.*  Without prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in paragraphs 19 and 21), the Debtors have waived any and all claims and causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders and their respective agents, affiliates, subsidiaries, directors, officers, representatives,

27

attorneys or advisors, directly related to the DIP Facility, this Order or the negotiation of the terms thereof.

21.     *Limitation on Use of DIP Facility Proceeds and Collateral.*  The Debtors shall use the proceeds of the DIP Facility and the Cash Collateral solely as provided in this Order and in the DIP Documents.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Documents or the Prepetition Secured Credit Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Secured Credit Documents, (b) assert any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agents' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Secured Credit Documents or this Order or (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders hereunder, under the DIP Facility or the Prepetition Secured Credit Documents, in each foregoing case without such party's prior written consent; provided that no more than an aggregate of $50,000 of the Cash Collateral, the DIP Facility, the Prepetition Collateral, the Postpetition Collateral, or the Carve Out, may be used by any Committee or Committees to investigate the validity, enforceability or priority of the Prepetition Agents' liens on the Prepetition Collateral, or otherwise asserting any claims or

28

causes of action against the Prepetition Agents or the Prepetition Secured Lenders on behalf of
the Debtors' estates.

22.     *Insurance.* Pursuant to this Order, (i) the DIP Agent and the DIP Lenders shall be
and shall be deemed to be, without any further action or notice, named as an additional insured
on each insurance policy maintained by any of the Debtors which in any way relates to the
Collateral, and (ii) the Prepetition Agents and the Prepetition Secured Lenders, to the extent of
their Adequate Protection Liens, shall be and shall be deemed to be, without any further action or
notice, named as additional insureds on each insurance policy maintained by any of the Debtors
which in any way relates to the Collateral. The proceeds of any such insurance policy shall be
applied to repay, first, the obligations under the DIP Facility, second, the Adequate Protection
Obligations owed to the Senior Prepetition Agent and the Senior Prepetition Lenders and, third,
the Adequate Protection Obligations owed to the Junior Prepetition Agent and the Junior
Prepetition Lenders.

23.     *Proofs of Claim.*

(a) In order to facilitate the processing of claims, to ease the burden upon this
Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agents are
authorized to file master proofs of claim on behalf of themselves and each of the Prepetition
Secured Lenders on account of their claims arising under the Prepetition Secured Credit
Documents and hereunder against the Debtors (the "Master Proofs of Claim"), and the
Prepetition Agents shall not be required to file verified statements pursuant to Rule 2019 of the
Federal Rules of Bankruptcy Procedure.

(b) Upon the filing of the Master Proofs of Claim against the Debtors, the
Prepetition Agents and each Prepetition Secured Lender, and each of their respective successors

29

and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Secured Credit Documents, and the claim of the Prepetition Agents and each Prepetition Secured Lender (and each of their respective successors and assigns), named in the Master Proofs of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each applicable Case in the amount set forth opposite each name in the Master Proofs of Claim; provided that the Prepetition Agents may, but shall not be required to, amend their respective Master Proofs of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c) The provisions set forth of this paragraph and the Master Proofs of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proofs of Claim shall affect the substantive rights of the Debtors, any Committee, the Prepetition Agents or the Prepetition Secured Lenders or any other party in interest or their respective successors in interest including, without limitation, the right of each Prepetition Secured Lender (or their successors in interest) to vote separately on any plan of reorganization proposed in the Cases.

24.     *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

25.     *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, any Committee, and any of the Debtors and their respective

30

successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders and the Debtors and each of their respective successors and assigns; *provided, however,* that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of any of the Debtors.

26.    *Limitation of Liability.*  In determining to make any loan under the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders any liability for any claims arising from the pre-petition or post-petition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.

27.    *Right of Access and Information.*

31

(a)     The Debtors shall permit representatives, agents and/or employees of the DIP Agent to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

(b)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in this Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that a default has occurred and is continuing under the DIP Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Lenders, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the applicable Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent (on behalf of the DIP Lenders) shall only pay rent and additional rent obligations of the Debtors that first arise after the DIP Agent's written notice referenced above and that are payable during the period of such occupancy by the DIP Agent, calculated on a *per diem* basis. Other than the payment obligation contained in this paragraph, neither the DIP Agent nor the DIP Lenders shall be required to perform any of the Debtors' obligations under any lease as a condition to the rights afforded to the DIP Agent or the DIP Lenders in this paragraph. Furthermore, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any Collateral of the Debtors located on such leased

32

premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the liens of the DIP Lenders in such Collateral.

28.     *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(g), shall take effect immediately upon execution hereof.

29.     *Final Hearing.* The Final Hearing is scheduled for ___July 13___, 2006 at ___4:00 p___.m. before this Court. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Willkie Farr & Gallagher LLP, Co-Counsel for the Debtors, 787 Seventh Avenue, New York, New York 10019, Attn: Matthew A. Feldman, Esq.; (b) Young Conaway Stargatt & Taylor, LLP, Co-Counsel for the Debtors, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Robert S. Brady, Esq.; (c) Skadden, Arps, Slate, Meagher & Flom LLP, Counsel for the DIP Lenders, 333 West Wacker Drive, Chicago, Illinois 60606, Attn: Timothy R. Pohl, Esq.; (d) Simpson Thacher & Bartlett LLP, Counsel for the Prepetition Agent, 425 Lexington Avenue, New York, New York 10017-3954, Attn: Steven M. Fuhrman, Esq.; (e) Milbank, Tweed, Hadley & McCloy LLP, Counsel for the Ad Hoc Committee of Second Lien Lenders, 601 S. Figueroa Street, 30th Floor, Los Angeles, California 90017-5735, Attn: Robert Jay Moore, Esq.; and (f) the office of the United States Trustee for the

33

District of Delaware, and shall be filed with the Clerk of the United States Bankruptcy Court for

the District of Delaware, in each case to allow actual receipt by the foregoing no later than

_July__7___, 2006 at 4:00 p.m., prevailing Eastern time.


Dated:    June 13, 2006
          Wilmington, Delaware

                                        _____
                                        Kevin J. Carey
                                        United States Bankruptcy Judge

DB02:5358670.2                                      065391.1001