IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------- x
In re                                :    Chapter 11
                                     :
WERNER HOLDING CO. (DE), INC., *et al.*,  :    Case No. 06-10578 (KJC)
                                     :
            Debtors.                 :    Jointly Administered
                                     :
                                     :    **Doc. Ref. No. 138 & 340**
----------------------------------- x

## SECOND CERTIFICATION OF COUNSEL REGARDING ORDER GRANTING THE DEBTORS' MOTION SEEKING AUTHORITY TO HONOR PREPETITION INCENTIVE-BASED BONUS PLANS PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY CODE

On June 30, 2006, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] filed the Debtors' Motion for Entry of Order Authorizing Debtors to Honor Prepetition Incentive-Based Bonus Plan Pursuant to Sections 363 and 105 of the Bankruptcy Code [Docket No. 138] (the "Motion").

By Order dated July 28, 2006, the Court approved the Chicago Transition Plan[2] on an interim basis and also approved a portion of the BOB Plan. With respect to the BOB Plan, the Court authorized the Debtors to make payments that are due as of July 31, 2006 under the BOB Plan to all participants in the BOB Plan <u>other than</u> the ten (10) participants that are members of the Debtors' executive leadership team (collectively, the "ELT Members"). At the hearing held on August 17, 2006 (the "Hearing"), the Court approved the Chicago Transition

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parentheses: (i) Werner Holding Co. (DE), Inc. (1345); (ii) Werner Holding Co. (PA), Inc. (6895); (iii) Werner Co. (4435); and (iv) WIP Technologies, Inc. (2599). Werner Holding Co. (DE), Inc. and WIP Technologies, Inc. are located at 1105 North Market Street, Suite 1300, Wilmington, Delaware 19801. Werner Holding Co. (PA), Inc. and Werner Co. are located at 93 Werner Road, Greenville, Pennsylvania 16125.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion

Plan on a final basis and the payments due as of July 31, 2006 under the BOB Plan to the ELT Members, other than Steve Richman,, subject to certain conditions.

On August 18, 2006, the Debtors filed a certification of counsel [Docket No. 340] (the "Certification of Counsel") regarding a proposed order approving the Motion consistent with the Court's hearing at the Hearing. However, the order attached to the Certification of Counsel inadvertently omitted Exhibit A to the order.

Attached hereto as Exhibit A is a form of order (the "Order"), including Exhibit A to the Order, that the Debtors submit is consistent with the Court's ruling at the Hearing. The Debtors have provided a copy of the Order to the United States Trustee, counsel to the Committee and counsel for the Ad Hoc Committee of Second Lien Claims. The foregoing parties have advised the Debtors that they consent to the form of Order.

The Debtors respectfully request that the Court enter the Order at its earliest convenience without further notice or hearing.

Dated: Wilmington, Delaware
August 21, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Kara Hammond Coyle (No. 4410)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

-and-

WILLKIE FARR & GALLAGHER LLP
Matthew A. Feldman
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Co-Counsel for the Debtors and
Debtors in Possession

# **Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------x
In re                                   :    Chapter 11
                                        :
WERNER HOLDING CO. (DE), INC., *et al.*,:    Case No. 06-10578 (KJC)
                                        :
            Debtors.                    :    Jointly Administered
                                        :
                                        :    **Doc. Ref. No. 138**
------------------------------------x

## ORDER RE: MOTION FOR ORDER AUTHORIZING DEBTORS TO HONOR PRE-PETITION INCENTIVE-BASED BONUS PLANS

Upon the motion [Docket No. 138] (the "Motion") of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for an order, pursuant to sections 363(b) and 105(a) of title 11 of the United States Code, authorizing, but not directing, the Debtors to honor the prepetition incentive-based bonus plans described in the Motion (the "Bonus Plans"); and upon the: (a) Objection to Motion for Order Authorizing Debtors to Honor Pre-Petition Bonus Plans filed by the Office of the United States Trustee for the District of Delaware (the "United States Trustee") [Docket No. 207]; (b) Debtors' Reply to United States Trustee's Objection to Debtors' Motion to Authorize Debtors to Honor Prepetition Incentive-Based Bonus Plans Pursuant to Sections 363 and 105 of the Bankruptcy Code [Docket No. 225]; (c) Objection to Debtors' Motion to Honor Prepetition Incentive Based Bonus Plans and Request for Continuance filed by the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 236]; and (d) Debtors' Reply to Objection to Debtors' Motion to Honor Prepetition Incentive Based Bonus Plans and Request for Continuance [Docket No. 238]; and a hearing on a portion of the Motion having been held on July 25, 2006 and an Order Granting Partial Relief Requested in Debtors' Motion Seeking Authority To Honor Prepetition Incentive-Bases Bonus

Plans on July 28, 2006 [Docket No. 259] having been entered; and upon the: (x) Statement in Support of Certain Relief Requested with Respect to Debtors' Motion for Entry of Order Authorizing Debtors to Honor Prepetition Incentive-Based Bonus Plans filed by Black Diamond Commercial Finance, LLC [Docket No. 331]; (y) Statement of Second Lien Committee Regarding Debtors' Motion for Authority to Honor Prepetition Incentive Based Bonus Plans [Docket No. 333]; and (z) Supplemental Objection to Debtors' Motion for Authorization to Honor Certain Prepetition Bonus Plans filed (under seal) by the Committee [Docket No. 334]; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and a hearing on the remainder of the Motion having been held on August 17, 2006; and it appearing that the relief requested by the Motion is in the best interest of these estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is granted to the extent set forth herein.

2. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

3. The Debtors are authorized, but not directed, to make payments that are due as of July 31, 2006 under the BOB Plan (the "July Payment") to the ten (10) participants in the BOB Plan that are members of the Debtors' executive leadership team and/or insiders (collectively, the "ELT Members") subject to the procedures set forth below, except that: (a) Steven Richman shall not receive his July Payment unless he is terminated without cause, at which time Mr. Richman's July Payment would become due and payable; (b) the July Payment received by Mr. Steven Bentson shall be subject to disgorgement if Mr. Bentson voluntarily

terminates his employment prior to December 31, 2006 and by accepting his July Payment, Mr. Bentson acknowledges and consents to the personal jurisdiction of this Court to enforce such disgorgement; and (c) the Debtors shall complete written evaluations (including, without limitation, a detailed basis and justification for the amount of the July Payments being awarded on the basis of such written evaluations) of each ELT Members' entitlement to the July Payments and provide copies of such evaluations (including the detailed items above) to counsel for the Committee no later than September 1, 2006. To the extent the Committee objects to any July Payments of ELT Members, it must deliver such objections to counsel for the Debtors in writing (including, without limitation, a detailed basis and justification for objecting to the amount of the July Payments being awarded on the basis of such written evaluations) no later than 5:00 p.m. on September 11, 2006. At that time, the Debtors shall be authorized to pay ELT Members the undisputed portion of the July Payments. As to the disputed portion of the July Payments, such portion of the July Payments shall not be made and the Court shall conduct a telephonic conference on September 12, 2006 or such other time as may be determined by the Court before any party takes any further action with respect to the disputed July Payments.

4. The Chicago Transition Plan is hereby approved on a final basis and the Debtors are authorized, but not directed, to make payments as may be necessary to effectuate the Chicago Transition Plan; provided, however, that prior to making payment of any Chicago Bonus to a participating employee under the Chicago Transition Plan, such participating employee shall execute and deliver to the Debtors a release agreement in substantially the form attached hereto as Exhibit A.

5. The balance of the relief requested in the Motion with respect to the BOB Plan will be deferred to a subsequent hearing; provided, however, that prior to the time of such

-3-

subsequent hearing, the Debtors shall retain (i) a employee benefits consultant to evaluate and advise the Debtors as to bonus and incentive program needs and market standards; and (ii) propose and negotiate a comprehensive incentive compensation program for the ELT, which may or may not include provisions currently incorporated in the BOB Plan.

6. The authorization granted hereby with respect to the Bonus Plans shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to make payments under the Bonus Plans, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to honor the payments under the Bonus Plans hereunder and nothing contained in this order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the employees' claims under the Bonus Plans to the extent they are not paid.

7. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

8. Notwithstanding Bankruptcy Rule 6004(g), this Order shall be effective and enforceable immediately upon entry hereof.

9. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: Wilmington, Delaware
       August ___, 2006

                              KEVIN J. CAREY
                              UNITED STATES BANKRUPTCY JUDGE

-4-

DB02:5471033.3                                            065391.1001

# **EXHIBIT A**

# AGREEMENT AND RELEASE OF ALL CLAIMS

This Agreement and Release of All Claims as well as any attachments hereto (collectively, the "Agreement") is entered into by and between _____ (the "Employee") and Werner Holding Co. (DE), Inc. (the "Company"), dated as of _____.

1. Termination Date

    Employee acknowledges that Employee's employment with the Company and its affiliates and subsidiaries (including, without limitation, Werner Co.) shall terminate as of _____ (the "Termination Date").

2. Termination Benefits

    (a) In the Employee's last regular paycheck, the Company shall pay to the Employee all "Salary" accrued as of the Termination Date, as well as all accrued but unused vacation pay, in each instance less all applicable deductions. For purposes of this Agreement, "Salary " shall mean wages earned as of the Termination Date, excluding shift premiums, overtime, bonuses or any other allowance.

    (b) The Employee will be reimbursed for any unpaid business expenses that the Employee has incurred and submitted for payment to the Company through the Termination Date.

    (c) The Employee will receive, under separate cover, general information about the Employee's right to elect health insurance continuation coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

    (d) Provided that the Employee agrees to and accepts the terms of this Agreement, in conjunction with the Chicago Plant Transition Bonus Plan (the "Severance Pay Plan"), the Employee shall receive an amount equal to [_____], less all applicable deductions (the "Severance Benefits"). Such amount shall be paid in a lump sum no earlier than the eighth day after the Employee executes this Agreement.

3. Release and Waiver of Claims

    (a) As a condition of the Company's willingness to enter into this Agreement and in consideration of the payment and benefits described above, and for other good and valuable consideration, the Employee, on behalf of **himself/herself, and his/her** family, heirs, executors, administrators, legal representatives and assigns (collectively the "Releasors"), hereby unconditionally and forever releases, waives and discharges the Releasees (as defined in subparagraph 3(b) below) from and with respect to, and acknowledges full accord and satisfaction of, any and all agreements, promises, rights, liabilities, claims and demands of any kind whatsoever (upon any legal or equitable theory, whether contractual, common law or statutory, under federal, state or local law or otherwise) whether known or unknown, asserted or unasserted, apparent or concealed, that the Releasors ever had, now have or hereafter can, shall or may have for, upon or by

reason of any matter, cause or thing whatsoever existing, accruing, arising or occurring at any time on or prior to the date Employee executes this Agreement.

Without limiting the generality of the foregoing, the Releasors hereby release, waive and forever discharge the Company and the Releasees from: (i) any and all rights and claims arising out of or relating to the Employee's employment with the Company and/or any Releasee, compensation and benefits provided by the Company and/or any Releasee, or the termination of the Employee's employment with the Company and/or any Releasee, (ii) any and all contract claims, claims for compensation or accrued benefits; (iii) any and all fraud claims, defamation, disparagement and other personal injury and tort claims, (iv) any and all claims under any federal, state or municipal statute, ordinance or regulation, public policy or the common law, including, without limitation, any employee benefit, wage payment, discrimination or fair employment practices law, statute or regulation or any other law, statute or regulation concerning employment, and (v) any and all claims for costs, expenses and attorneys' fees with respect thereto, except that the Company's obligations under this Agreement shall continue in full force and effect in accordance with its terms. THIS RELEASE AND WAIVER INCLUDES, WITHOUT LIMITATION, ANY AND ALL RIGHTS AND CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACTS OF 1866, 1871 AND 1991, THE EQUAL PAY ACT, THE FAIR LABOR STANDARDS ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE AMERICANS WITH DISABILITIES ACT, THE AGE DISCRIMINATION IN EMPLOYMENT ACT, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE LABOR-MANAGEMENT RELATIONS ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE IMMIGRATION REFORM AND CONTROL ACT, THE ILLINOIS HUMAN RIGHTS ACT, THE ILLINOIS EQUAL WAGE ACT, THE ILLINOIS RIGHT TO PRIVACY IN THE WORKPLACE ACT, THE ILLINOIS MINIMUM WAGE LAW, THE ILLINOIS GENETIC INFORMATION PRIVACY ACT, THE ILLINOIS SCHOOL VISITATION RIGHTS ACT, THE ILLINOIS CONSTITUTION, THE COOK COUNTY HUMAN RIGHTS ORDINANCE AND THE CHICAGO HUMAN RIGHTS ORDINANCE, as such laws have been or may be amended.

Notwithstanding the foregoing, nothing in this Section 3 shall be deemed (a) to affect or diminish any vested monies or other vested benefits to which Employee may be entitled under or pursuant to any savings or retirement plan of the Company, or (b) to release, discharge or waive the Employee's right to enforce the terms of this Agreement.

(b) For purposes of this Agreement, "Releasees" includes the Company, its past and present direct and indirect parents, subsidiaries, affiliates, predecessors, successors and assigns, all of its and their respective past and present officers, directors, attorneys, stockholders, employees, representatives and agents, whether acting as agents or in individual capacities, and the Company's pension and welfare plans (and their respective plan administrators, fiduciaries, trustees, and insurers), and any person or entity which may succeed to the rights and liabilities of any such entities, persons or plans by

assignment or otherwise, and this Agreement shall inure to the benefit of and shall be binding upon and enforceable by all such entities, individuals and plans.

4. Confidentiality

The Employee will not, without the Company's prior written consent, disclose to any person or entity any confidential or proprietary information concerning the business, methods or affairs of the Company which Employee may have acquired in the course of or as an incident to the Employee's employment with the Company.

5. Entire Agreement

This Agreement (which includes any attachments hereto) contains the entire agreement between the Employee and the Company and supersede and terminate any and all previous agreements and understandings between the Employee and the Company, whether oral or written. This Agreement may not be changed orally, and no modification, amendment or waiver of any of the provisions contained in this Agreement, nor any future representation, promise or condition in connection with the subject matter of this Agreement shall be binding upon any party hereto unless made in writing and signed by such party. The Employee acknowledges that the Company has not made any promises, commitments or representations to the Employee other than those set forth in this Agreement and that the Employee has not relied upon any statement or representation made or used by the Company with respect to the basis or effect of this Agreement or otherwise.

6. Acknowledgements

(a) The Employee acknowledges and agrees that the Severance Benefits exceed any payment, benefit or other thing of value that the Releasees may owe the Employee and that the Employee is not entitled to any compensation, payments or benefits of any kind from the Company and the Releases other than as set forth in this Agreement.

(b) The Employee acknowledges and agrees that the Employee was given reasonable and ample time to review and consider this Agreement before signing it; that the Employee has carefully read and reviewed this Agreement in its entirety; and that the Employee is entering into this Agreement voluntarily and of the Employee's own free will. Further, the Employee acknowledges that, as evidenced by this letter, the Company has encouraged the Employee in writing to show and discuss this Agreement with an attorney of the Employee's choosing before signing it and that, to the extent the Employee wished to do so, the Employee has done so. The Employee further acknowledges that the Employee's execution of this Agreement is knowing and completely voluntary.

This Agreement may not be signed by the Employee before the Termination Date.

EMPLOYEE

_____

Dated: _____

WERNER HOLDING CO. (DE), INC.

By: _____
Name: _____
Title: _____

## STATEMENT TO COMPLY WITH THE
## AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA")

In the Attachment to the Agreement, I, _____, have been provided with information concerning (i) the group of individuals covered by the Separation Payment Program (the "Program"); (ii) the applicable time limits governing the Program; (iii) the job titles and ages of individuals selected for the Program and individuals who were not selected for the Program.

    I acknowledge and agree that I fully understand the terms of this Agreement, that I have voluntarily and knowingly signed this Agreement, and that I was given at least 45 days in which to consider whether or not to agree to it. Further, I may change my mind and revoke my assent to this Agreement at any time within seven (7) days of my signing it, by delivering written notice of such revocation within that seven-day period to _____ **[name and address]** by hand, by overnight delivery service, or by certified mail, return receipt requested. If I revoke this Agreement, it will be null and void. Notwithstanding anything contained in this Agreement to the contrary, this Agreement will not become fully effective and enforceable until after the expiration of the seven-day revocation period.

    I further acknowledge and agree that I have been advised in writing to consult with an attorney of my choosing before signing this Agreement and that, to the extent I wished to do so, I have done so. If I executed this Agreement and Release before the end of the 45-day period referenced in the prior paragraph, such early execution was completely voluntary, and I had reasonable and ample time in which to review this Agreement with my attorney.

_____          Dated: _____

# INFORMATION ABOUT THE SEPARATION PAYMENT PROGRAM
# IN ACCORDANCE WITH THE
# AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

I. <u>Group Covered by Termination Program</u>

The decisional unit considered for this Program is _____. To be eligible for this Program, a person in the decisional unit must _____.

II. <u>Applicable Time Limits</u>

Each selected employee will have at least 45 days to submit a signed copy of the Agreement to the Company, although he or she may submit it earlier than 45 days from receipt. In no event, however, will the Company accept a signed copy of the Agreement prior to the employee's Termination Date. Once the Agreement has been signed, the participant in the Program has seven days to revoke it by delivering written notice within that seven-day period to _____, by hand, by overnight delivery service, or by certified mail, return receipt requested.

III. <u>Job Titles And Ages Of Individuals Selected For The Program</u>

<u>Job Title</u>　　　　　　　<u>Age</u>

**[insert applicable information in the format indicated]**


IV. <u>Job Titles and Ages of Individuals Not Selected For The Program</u>

<u>Job Title</u>　　　　　　　<u>Age</u>

**[insert applicable information in the format indicated]**