IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WERNER HOLDING CO. (DE), INC., *et al.*, | : | Case No. 06-10578 (KJC) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Related Docket No. 1231** |

**ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES;
(2) AUTHORIZING AND APPROVING THE PURCHASE AGREEMENT (3)
APPROVING ASSUMPTION AND ASSIGNMENT AND SALE OF CERTAIN
CONTRACTS AND LEASES; (4) AUTHORIZING THE EXEMPTION OF THE SALE
FROM STAMP AND SIMILAR TAXES; AND (5) GRANTING RELATED RELIEF**

This matter having come before the Court on the Debtors' [1] Motion for Order: (1)

Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims,

Interests and Encumbrances; (2) Approving Assumption and Assignment and Sale of Certain

Contracts and Leases; (3) Authorizing and Approving the Purchase Agreement; (4) Authorizing

the Exemption of the Sale from Stamp and Similar Taxes; and (5) Granting Related Relief (the

"Motion"), pursuant to which the Debtors sought, *inter alia*, (a) an order authorizing the sale of

substantially all of the assets (the "Sale") of the Debtors to New Werner Holdings CO. (DE),

LLC, a Delaware limited liability company (the "Buyer"), free and clear of all Encumbrances [2]

---

[1]     The last four digits of the taxpayer identification numbers for each of the Debtors follow in parentheses:
(i) Werner Holding Co. (DE), Inc. (1345); (ii) Werner Holding Co. (PA), Inc. (6895); (iii) Werner Co. (4435);
and (iv) WIP Technologies, Inc. (2599). Werner Holding Co. (DE), Inc. and WIP Technologies, Inc. are
located at 1105 North Market Street, Suite 1300, Wilmington, Delaware 19801. Werner Holding Co. (PA), Inc.
and Werner Co. are located at 93 Werner Road, Greenville, Pennsylvania 16125.

[2]     The term "Encumbrances" shall have the meaning ascribed to it in the Asset Purchase Agreement dated as of
March 20, 2007 (hereinafter, as has or may be amended, the "Purchase Agreement"), but shall not include
Permitted Encumbrances (as defined in the Purchase Agreement). A copy of the Purchase Agreement is

pursuant to Sections 105, 363, 365 and 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the assets to be sold being more fully described in the Motion, and collectively defined in the Purchase Agreement, and hereinafter referred to as the "Purchased Assets"); and the Court having entered on March 23, 2007, its *Order (A) Approving Bidding Procedures and Bidding Protections in Connection with Sale of Substantially All of The Debtors' Assets; (B) Establishing Procedures to Determine Cure Amounts and Deadlines for Objections for Certain Contracts and Leases That May Be Assumed and Assigned by the Debtors; and (C) Granting Certain Related Relief* (the "Bidding Procedures Order"), authorizing the Debtors to proceed with the sale procedures set forth therein and approving the Expense Reimbursement (the "Bidding Procedures") and the form of notice of the hearing on the Sale Motion; and the Court having conducted a hearing on the Motion on April 25, 2007 (the "Sale Hearing"); and all interested parties having been heard, or having had the opportunity to be heard, regarding approval of (i) the Motion, (ii) the Sale, and (iii) the Purchase Agreement and the transactions contemplated thereby (the "Transactions"); and the Court having reviewed and considered the Motion and objections thereto, and the arguments of counsel made, and the evidence adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the record of the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore; **THE COURT HEREBY FINDS DETERMINES AND CONCLUDES THAT:**

---

attached hereto as Exhibit A. Except as otherwise noted in this Order, capitalized terms that are used but not defined in this Order have the meanings ascribed to such terms in the Purchase Agreement.

A.     The findings and conclusions set forth herein constitute the Court's
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any of
the following findings of fact constitute conclusions of law, they are adopted, and shall be
construed and deemed, conclusions of law. To the extent any of the following conclusions of
law constitute findings of fact, they are adopted, and shall be construed and deemed, as findings
of fact.

B.     The Court has jurisdiction to hear and determine the Motion and to grant
the relief requested in the Motion and authorize the Sale pursuant to 28 U.S.C. §§ 157(b)(1) and
1334(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408
and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.     The statutory predicates for the relief sought in the Motion are Sections
105, 363, 365 and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and
9014.

D.     Notice of the Sale Hearing was transmitted to: (a) the Office of the United
States Trustee; (b) to all (i) creditors of the Debtors as defined in Section 101(1) of the
Bankruptcy Code; (ii) entities known to the Debtors to possess and/or exercise any control over
any of the Purchased Assets; (iii) entities known to the Debtors to assert any rights (including
Encumbrances) in any of the Purchased Assets; (iv) parties in interest and other entities and
persons so entitled and known to the Debtors; (v) non-Debtor parties to the Seller Agreements[3]
and Assumed Leases; (vi) other entities that Debtors believe may have a claim against any of the
Debtors; (vii) applicable federal, state and local tax authorities with jurisdiction over the Debtors
and/or the Purchased Assets; (viii) federal, state and local environmental authorities in

---

[3]     The term Seller Agreements shall include each agreement between each of Lowe's Companies, Inc. and its
subsidiaries and each of the Debtors (collectively, the "Lowe's Agreements").

3

jurisdictions in which the Debtors operate and/or in which the Purchased Assets are located; and (ix) entities that requested notice in the Debtors' chapter 11 cases; and (c) any known party which has expressed a bona fide interest in writing to the Debtors regarding any purchase of the Purchased Assets.

E.    As evidenced by the affidavits of service and publication filed with the Court, notice of the Sale Hearing was published (a) in The National Edition of *The Wall Street Journal* on March 27, 2007 and (b) four times in the weekly edition of *Home Channel News* starting on March 30, 2007.

F.    Notice of the Motion, the Bidding Procedures, the Bidding Procedures Order and the Sale Hearing, and of the Debtors' intent to assume and assign the Seller Agreements and the Assumed Leases, was proper, timely, adequate and sufficient notice under the circumstances of these Bankruptcy Cases and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested parties.

G.    The Debtors have the legal power and authority to convey all of their right, title and interest in and to the Purchased Assets.

II.    The Debtors actively marketed the Purchased Assets. The Debtors provided notice of the Sale to each entity that expressed a bona fide interest in the Purchased Assets or the Business. Based upon the record of these proceedings, all creditors, equityholders, other parties-in-interest and prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

4

I.      The Debtors received no additional Qualified Bids (as defined in the Bidding Procedures). Buyer is the Successful Bidder (as defined in the Bidding Procedures). No Auction was required under Bidding Procedures.

J.      Each Debtor has (a) full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Debtors has been duly and validly authorized by all necessary company action of each of the Debtors, (b) the necessary power and authority to consummate the Transactions, and (c) taken all company action necessary to authorize and approve the Purchase Agreement and consummate the Transactions. No consents or approvals, other than those expressly provided for in the Purchase Agreement or in the Disclosure Schedules thereto, are required for the Debtors to close the Sale and consummate the Transactions.

K.      Sound business reasons exist for the Sale. Entry into the Purchase Agreement and consummation of the Transactions constitute the Debtors' exercise of sound business judgment and such acts are in the best interests of the Debtors, their estates, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale. Such business reasons include, but are not limited to, the following: (i) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets on a going concern basis and avoid decline and devaluation of the Debtors' business; and (iii) any plan would have likely yielded, at best, the same economic result, i.e., the sale of a substantial portion of the Debtors' assets creating a residual fund against which creditors would have claims.

L.    The Purchase Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and Buyer at arms' length without collusion or fraud, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code. As a result of the foregoing, the Debtors and Buyer are entitled to the protections of Section 363(m) of the Bankruptcy Code. Moreover, none of the Debtors, Buyer or other bidders or potential bidders engaged in any conduct that would cause or permit the Purchase Agreement, the consummation of the Transactions or the assumption and assignment of the Seller Agreements or the Assumed Leases to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

M.    The Buyer Control Parties hold a majority of the First Lien Indebtedness and, therefore, constitute Required Lenders (as defined in the First Lien Credit Agreement) under the First Lien Credit Agreement. The First Lien Lenders (which include the Buyer Control Parties) hold asserted Encumbrances in, on and against the Debtors, their estates and property of the estates, arising in connection with the First Lien Credit Agreement, under which the First Lien Lenders hold a claim for (1) principal and accrued interest in an amount of not less than $136 million and (2) for reimbursement under outstanding letters of credit in an amount of not less than $10.822 million. Pursuant to the First Lien Direction, the Buyer Control Parties instructed the First Lien Agent to credit bid 100% of the First Lien Indebtedness in consideration of the Purchased Assets. A portion of the Purchase Price paid by Buyer for the Purchased Assets was a credit bid of 100% of the First Lien Indebtedness, which credit bid was valid and proper pursuant to the Bidding Procedures and Bankruptcy Code Sections 363(b) and 363(k) (the "Credit Bid").

6

N.       The Purchase Price provided by Buyer for the Purchased Assets is the highest or otherwise best offer received by the Debtors, and the Purchase Price constitutes reasonably equivalent value for the Purchased Assets under the Bankruptcy Code and other applicable law. A sale of the Purchased Assets other than one free and clear of Encumbrances would impact materially and adversely on the Debtors' bankruptcy estates, would yield substantially less value for the Debtors' estates, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the estates of the Debtors. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors and the indirect benefits of such Sale for the Debtors' employees, the Debtors' vendors and suppliers and the public served, directly and indirectly, by the functions performed by the Debtors' employees and the Business. Therefore, the Sale contemplated by the Purchase Agreement is in the best interests of the Debtors and their estates, creditors and other parties in interest.

O.       Pursuant to the First Lien Direction, the First Lien Agent has been instructed to assign to Buyer at Closing its right to receive the Purchased Assets (subject to the Assumed Liabilities), and Buyer has agreed to accept such assignment from the First Lien Agent and acquire all of Debtors' right, title and interest in the Purchased Assets (subject to the Assumed Liabilities). The First Lien Agent has agreed to distribute the Buyer Equity Consideration ratably to the First Lien Lenders (or otherwise pursuant to instructions from 100% of the First Lien Indebtedness) on or as soon as reasonably practicable after the Closing Date. Upon distribution of the Buyer Equity Consideration, Buyer will be owned ratably by the First Lien Lenders.

7

P.        Buyer would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets, and the assignment of the Seller Agreements and Assumed Leases, to Buyer was not free and clear of all Encumbrances, or if Buyer would, or in the future could, be liable for any such Encumbrance. A sale of the Purchased Assets other than one free and clear of Encumbrances would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale free and clear of Encumbrances, as contemplated by the Purchase Agreement, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Q.        The Debtors may sell the Purchased Assets free and clear of all Encumbrances, because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances who did not object or withdrew objections to the Sale or the Sale Motion are deemed to have consented to the Sale Motion and Sale pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of Section 363(f) Bankruptcy Code.

R.        The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign and sell the Seller Agreements and Assumed Leases to Buyer in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Seller Agreements and Assumed Leases is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Seller Agreements and Assumed Leases being assigned and sold to Buyer are an integral part of the Purchased Assets being purchased by

8

Buyer, and accordingly, such assumption, assignment, and sale of the Seller Agreements and Assumed Leases are reasonable and enhance the value of the Debtors' estates.

S.      Buyer has provided or will provide adequate assurance of cure of any default existing prior to the Closing under any of the Seller Agreements and Assumed Leases, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code. Buyer has provided or will provide adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Seller Agreements and Assumed Leases within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code. The Debtors have satisfied each of the foregoing through the Purchase Agreement to pay such amounts on the terms and conditions contained in the Purchase Agreement. Buyer has provided adequate assurance of its future performance of and under any of the Seller Agreements and Assumed Leases, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

T.      Immediately prior to the Closing, Buyer was not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Buyer and any of the Debtors. Pursuant to the Purchase Agreement, Buyer is not purchasing all of the Debtors' assets in that Buyer is not purchasing any of the Excluded Assets, and Buyer is not holding itself out to the public as a continuation of the Debtors. Those of the Debtors' employees who are to be employed by Buyer pursuant to the Purchase Agreement are being hired under new employment contracts or other arrangements to be entered into or to become effective at the time of the Closing. The Sale and related Transactions are not and do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between Buyer and the Debtors, there is no continuity of enterprise between the

9

Debtors and Buyer, Buyer is not a mere continuation of the Debtors or the Debtors' estates, and Buyer does not constitute a successor to the Debtors or the Debtors' estates.

U.     The transfer of the Purchased Assets to Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances, including but not limited to all claims arising under doctrines of successor liability.

V.     The Sale does not constitute a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

W.     Time is of the essence in consummating the Sale. Accordingly, to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

X.     Approval of the Purchase Agreement and assumption, assignment, and sale of the Seller Agreements and the Assumed Leases, and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtors, their creditors, their estates, and all parties in interest.

Y.     Approval of the Stipulation Regarding Settlement of Certain Disputes and Objections, Creation of Litigation Trust and Funding, Management and Distribution with Respect to the Litigation Trust dated April 23, 2007 (the "Stipulation," attached hereto as Exhibit

10

C) pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) at this time is in the best interests of the Debtors, their creditors, their estates and all parties in interest.[4]

        Z.        Approval of Amendment No. 2 to Asset Purchase Agreement dated April 23, 2007 by and among the Sellers (as defined therein), New Werner Holding (DE), LLC, BDCM Opportunity Fund II, L.P., BDC Finance, L.L.C., Brencourt BD, LLC, TCW (as defined therein), Schultze (as defined therein), Milk Street Investors, LLC and Levine Leitchman Capital Partners III, L.P. (the "Second Amendment to the Purchase Agreement") at this time is in the best interests of the Debtors, their creditors, their estates and all parties in interest.

        Based upon all of the foregoing, and after due deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES THAT:**

### Sale of the Purchased Assets

        1.        The relief requested in the Motion is granted in the manner and to the extent provided herein.

        2.        All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, it is overruled and denied (including all reservations of rights or relief requested therein).

        3.        The Purchase Agreement (including without limitation the Credit Bid) and the Sale of the Purchased Assets to Buyer, are hereby approved and authorized in all respects.

        4.        The Stipulation is hereby approved and authorized in all respects.

---

[4] In furtherance of the approval of the Stipulation, on April 23, 2007, the Official Committee of Unsecured Creditors filed a Motion of the Official Committee of Unsecured Creditors to Approve this Stipulation Regarding Settlement of Certain Disputes and Objections, Creation of Litigation Trust and Funding, Management and Distributions with Respect to the Litigation Trust.

DB02:5935619.2                              065391.1001

5.      The Second amendment to the Purchase Agreement is hereby approved and authorized in all respects.

6.      The consideration provided by Buyer for the Purchased Assets under the Purchase Agreement, including the portion of the consideration that consisted of the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed on awarded against any party in interest in these bankruptcy cases under Section 363(n) or any other provision, of the Bankruptcy Code.

7.      The Transactions are undertaken by Buyer in good faith, Buyer is a buyer in good faith of the Purchased Assets as that term is used in Section 363(m) of the Bankruptcy Code, and Buyer is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code; accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption, assignment, and sale of any of the Seller Agreements or Assumed Leases), unless such authorization is duly stayed pending such appeal.

8.      Pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, upon the Closing Date, under the Purchase Agreement, the Purchased Assets shall be transferred to Buyer free and clear of (a) all Encumbrances, (b) any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, and (c) any claim, whether arising prior to or subsequent to the commencement of these bankruptcy cases, arising under doctrines of successor liability.

9.      Except as expressly provided in the Purchase Agreement or the Ancillary Documents, Buyer is not assuming nor shall it or any affiliate of Buyer be in any way liable or

12

responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Purchase Agreement or the Ancillary Documents, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of the Buyer.

          10.    The Debtors are authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Sale (including, without limitation, to convey to Buyer any and all of the Purchased Assets intended to be conveyed) and the Closing of the Transactions in accordance with the Motion, the Purchase Agreement and this Order; and (b) perform, consummate, implement and close fully the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement. The Parties shall have no obligation to proceed with the Closing of the Purchase Agreement until all conditions precedent to their obligations to do so as set forth in Article IX thereof have been satisfied or waived.

          11.    From and after the Closing, Buyer shall assume and agrees to pay, perform and otherwise discharge, the Assumed Liabilities pursuant to Section 2.3 of the Purchase Agreement, with such assumption of liabilities constituting a portion of the Purchase Price paid by Buyer for the Purchased Assets, and the Debtors shall be relieved of all such Assumed Liabilities.

13

12.     Buyer is hereby authorized in connection with the consummation of the

Sale to allocate the Purchased Assets and the Seller Agreements and Assumed Leases among its

affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems

appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the

Purchased Assets or the rights under any Seller Agreement or Assumed Lease to its affiliates,

designees, assignees, and/or successors with all of the rights and protections accorded under this

Order and the Purchase Agreement, and the Debtors shall cooperate with and take all actions

reasonably requested by Buyer to effectuate any of the foregoing.

## Assumption and Assignment of Seller Agreements and Assumed Leases

13.     The Debtors are hereby authorized, effective only as of the Closing and in

accordance with Sections 105(a), 363, 365(b)(1) and (f)(2) of the Bankruptcy Code, to: (a)

assume the Seller Agreements and Assumed Leases; (b) sell, assign and transfer to Buyer each of

the Seller Agreements and Assumed Leases in each case free and clear of all Encumbrances; and

(c) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign

and transfer the Seller Agreements and Assumed Leases.

14.     Notwithstanding the forgoing decretal paragraph, the agreements between

Oracle USA, Inc. ("Oracle") and the Debtors shall not be deemed assumed and assigned unless

and until the Buyer has provided to Oracle an executed "standard" Oracle assignment agreement

and reasonable financial information regarding the Buyer (collectively, the "Oracle Adequate

Assurances") and Oracle has indicated its consent to such assumption and assignment, which

will not be unreasonably withheld.  To the extent there are any disputes regarding the Oracle

Adequate Assurances, the parties may seek appropriate relief in this Court.

14

15.    Notwithstanding decretal paragraph 11, the Debtors are hereby authorized, effective only as of the Closing and in accordance with Sections 105(a), 363, 365(b)(1) and (f)(2) of the Bankruptcy Code, to: (a) assume all (but not less than all) Lowe's Agreements; (b) sell, assign and transfer to Buyer all (but not less than all) Lowe's Agreements in each case free and clear of all Encumbrances (except as provided in this decretal paragraph); and (c) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign and transfer all (but not less than all) Lowe's Agreements. For the avoidance of doubt, upon the assignment of the Lowe's Agreements to the Buyer, the Buyer will be required to perform all obligations under the Lowe's Agreements, including, but not limited to, the provision of any customer programs or indemnity obligations, if such obligations are set forth in or arise out of the Lowe's Agreements.

16.    The Seller Agreements and Assumed Leases, upon assignment and sale to Buyer, shall be deemed valid and binding, in full force and effect in accordance with their terms. Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title and interest of the Debtors in, to or under each Seller Agreement or Assumed Lease.

17.    All defaults or other obligations of the Debtors under the Seller Agreements and Assumed Leases arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the payment or other satisfaction of the Cure Costs in the amounts set forth on Exhibit B to this Order (the "Cure Amounts"). The Cure Amounts are hereby fixed at the amounts set forth on Exhibit B and the non-Debtor parties to the Seller Agreements and Assumed Leases are hereby forever bound by such Cure Amounts. Except for the Cure Amounts, there are no other defaults existing under the Seller Agreements

15

and Assumed Leases. The Cure Amounts are not subject to further dispute or audit, including based on performance prior to the assumption, assignment and sale thereof, irrespective of whether such Seller Agreement or Assumed Lease contains an audit or similar clause; provided, however, that nothing in this decretal paragraph shall alter or otherwise limit Buyer's obligation to pay or otherwise satisfy the liabilities assumed by Buyer under Sections 2.3 (a), (c), (d), (e) and (g) of the Purchase Agreement.

18.     Buyer shall pay or otherwise satisfy the Cure Amounts as soon as reasonably practicable following the Closing Date.

19.     Except for Buyer's obligation to pay or otherwise satisfy the Cure Amounts or as provided for in Sections 2.3 (a), (c), (d), (e) and (g) of the Purchase Agreement, as applicable, (a) each non-Debtor party to a Seller Agreement or Assumed Lease is hereby forever barred, estopped, and permanently enjoined from asserting against Buyer or the Purchased Assets any default, additional amounts or other Claims existing as of the Closing Date related to any Seller Agreement or Assumed Lease, whether declared or undeclared or known or unknown; and (b) such non-Debtor parties to the Seller Agreements and Assumed Leases are also forever barred, estopped, and permanently enjoined from asserting against Buyer any counterclaim, defense or setoff, or any other claim, lien or interest, asserted or assertable against the Debtors related to any Seller Agreement or Assumed Lease.

20.     The Debtors and Bradco Supply Corporation ("Bradco") shall use commercially reasonable efforts to reconcile the Cure Amount owed, if any, to Bradco, which amount shall not be greater than $48,907.67. To the extent any disputes arise regarding such Cure Amount, Bradco, the Debtors or the Buyer shall have the right to seek relief from the Court with regard to such dispute.

16

21.     Notwithstanding anything in the Purchase Agreement or the Order to the contrary, the Purchased Assets shall not include the insurance policies issued by ACE American Insurance Company ("ACE") or the agreements between the Debtors and ACE related to such policies.

22.     There shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to Buyer as a result of the assumption, assignment and sale of the Seller Agreements and Assumed Leases. Any provisions in any Seller Agreement or Assumed Lease that prohibit or condition the assignment of such Seller Agreement or Assumed Lease, allow the party to such Seller Agreement or Assumed Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Seller Agreement or Assumed Lease, constitute unenforceable anti-assignment provisions, and are void and of no force and effect. The validity of the assumption, assignment and sale of the Seller Agreements and Assumed Leases to Buyer shall not be affected by any existing dispute between any of the Debtors and any non-Debtor party to such Seller Agreement or Assumed Lease. Any party that may have had the right to consent to the assignment of its Seller Agreement or Assumed Lease is determined to have consented for the purposes of Section 365(e)(2)(A)(ii) of the Bankruptcy Code.

23.     The designation of an agreement as a Seller Agreement or Assumed Lease shall not be a determination that such agreement is an executory contract within the meaning of Section 365 of the Bankruptcy Code.

17

**Limitations on Liability and Release of Encumbrances**

24.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions. Except as set forth in the Purchase Agreement, no brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

25.     Upon the Closing, (a) pursuant to the terms of the Purchase Agreement, the Debtors are hereby authorized to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to Buyer free and clear of any and all Encumbrances, and (b) except as otherwise expressly provided in the Purchase Agreement, all Encumbrances shall be and hereby are released, terminated and discharged as to the Buyer and the Purchased Assets.

26.     Upon the Closing, and except as otherwise expressly provided in the Purchase Agreement or the Ancillary Documents, Buyer shall not be liable for any claims against, and liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the generality of the foregoing, (a) other than as specifically set forth in the Purchase Agreement or the Ancillary Documents, Buyer shall have no liability or obligation (x) to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or any other payment to employees of the Debtors, or (y) in respect of any collective bargaining agreement, employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related

18

to the rejection or other termination of any such plan, program agreement or benefit), and (b) Buyer shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against Buyer any Claims arising from or relating to such employee benefit, agreement, plan or program; provided, however, this decretal paragraph shall not be deemed to limit the obligations of Buyer under Section 8.2 of the Purchase Agreement.

27.     Any and all notices, if any, required to be given to Debtors' employees pursuant to the Worker Adjustment and Retraining Adjustment Act (the "WARN Act"), or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors, and Buyer shall have no responsibility or liability therefore.

28.     Buyer shall not be deemed a successor of or to the Debtors or the Debtors' estates with respect to any Encumbrances against the Debtors or the Purchased Assets, and Buyer shall not be liable in any way for any such Encumbrances, including, without limitation, the Excluded Liabilities or Excluded Assets. Upon Closing the Sale, all creditors, employees and equityholders of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Buyer or the Purchased Assets on account of any of the Encumbrances, Excluded Liabilities or Excluded Assets, or (b) asserting any claims or enforcing remedies under any theory of successor liability, *de facto* merger, substantial continuity or similar theory.

29.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased

19

DB02:5935619.2                                                                                                           065391.1001

Assets to Buyer, on the Closing Date pursuant to the terms of the Purchase Agreement and the Ancillary Documents.

30.      This Order is and shall be (a) effective as a determination that, upon Closing, all Encumbrances existing as to the Purchased Assets conveyed to Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to Buyer. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Encumbrances against the Purchased Assets from their records, official and otherwise.

31.      If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on or in the Purchased Assets shall not have delivered to Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Encumbrances, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and Buyer are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

20

32.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

33.     Any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtors shall be transferred to Buyer free and clear of Encumbrances.

## Validity of Prepetition Liens

34.     The obligations of and claims against the Debtors or their estates under or arising from the First Lien Credit Agreement (the "First Lien Credit Agreement Obligations") shall constitute the legal valid and binding obligations of the Debtors and their estates. No portion of the First Lien Credit Agreement Obligations shall be subject to avoidance, recharacterization, subordination or recovery pursuant the Bankruptcy Code or applicable non-bankruptcy law.

35.     The obligations of and claims against the Debtors or their estates under or arising from that certain Credit Agreement (the "Second Lien Credit Agreement"), dated as of May 10, 2005, among Werner Holding Co. (DE), Inc., the lenders party thereto and Credit Suisse First Boston, as administrative agent, and (in each case) all documents, instruments and agreements (including, without limitation, all collateral and security documents) executed or delivered in connection therewith (as such Second Lien Credit Agreement and each other document, instrument and agreement has been amended, modified, supplemented or restated) (the obligations under the Second Lien Credit Agreement, the "Prepetition Secured Obligations") shall constitute the legal valid and binding obligations of the Debtors and their estates. No

21

portion of the Prepetition Secured Obligations shall be subject to avoidance, recharacterization, subordination or recovery pursuant the Bankruptcy Code or applicable non-bankruptcy law.

36.    The Debtors and their bankruptcy estates shall forever release any claims, counterclaims, causes of action, defenses, set-offs and challenges to the validity, enforceability, priority or amount of the claims, liens and security interests granted for the benefit of the Lenders (as defined in both the First Lien Credit Agreement and the Second Lien Credit Agreement) (the "Lenders") whether arising under the Bankruptcy Code or otherwise, against the Agents (as defined in both the First Lien Credit Agreement and the Second Lien Credit Agreement), the Lenders, and their respective affiliates, agents, officers, directors, employees, attorneys, and advisors with respect to the First Lien Credit Agreement Obligations or the Prepetition Secured Obligations; provided, that, except as set forth in Paragraph 7 of the Stipulation Regarding Settlement of Certain Disputes and Objections, Creation of Litigation Trust and Funding, Management and Distributions with Respect to the Litigation Trust dated April 23, 2007 (the "Stipulation," attached hereto as Exhibit C), all rights are reserved with respect to the allowance or disallowance of any 507(b) claims related to the Prepetition Secured Obligations.

37.    The First Lien Credit Agreement Obligations shall be deemed satisfied in full, and all liens and claims relating thereto, including liens and claims under the Final DIP Order, shall be deemed extinguished.

**Use of Proceeds and Satisfaction of DIP Facility and First Lien Credit Facility**

38.    On the Closing Date, the Debtors shall be authorized and are hereby directed to effectuate the DIP Payoff (as defined below). "DIP Payoff" means the payment in full in cash to the agent under the DIP Facility (the "DIP Agent"), for the benefit of the holders

22

of all Claims against a Debtor arising pursuant to the DIP Facility, with respect to all outstanding "Obligations" (as defined in the DIP Facility) (such claims hereinafter referred to as "DIP Lender Claims"), in full and complete satisfaction of all DIP Lender Claims, provided that (a) outstanding letters of credit issued under the DIP Facility shall be cash-collateralized or supported by back-to-back letters of credit in an amount equal to 100% of the undrawn face amount of the outstanding letters of credit in accordance with the terms of the DIP Facility (collectively, "Cash-Collateralized") and (b) any DIP Lender Claims that do not arise until after the Closing shall be an Assumed Liability (and shall not be paid out of the Wind Down Amount or Excluded Assets) and shall be paid by the Buyer in full pursuant to the terms of the DIP Facility. Without limiting the foregoing, and notwithstanding anything herein to the contrary, once the DIP Lender Claims (other than those arising after the Closing) have been paid in full in cash (or Cash-Collateralized in the case of outstanding letters of credit), all Liens (as defined in the DIP Facility) on property of the Debtors with respect to the DIP Lender Claims shall automatically, without further action by the Debtors, the Buyer, the DIP Lenders or the DIP Agent, be deemed released, and the DIP Lenders and the DIP Agent shall take all reasonable actions at the Debtors' sole expense to confirm the removal of any such Liens on the properties and assets of the Debtors or the Buyer securing the DIP Lender Claims.

39.    Upon the Closing, all claims arising under the First Lien Credit Facility shall be deemed to be satisfied in full; provided that at the Closing, the Debtors shall be authorized and are hereby directed to Cash Collateralize all outstanding letters of credit issued under the First Lien Credit Facility. Without limiting the foregoing, and notwithstanding anything herein to the contrary, once the claims arising under the First Lien Credit Facility have been deemed satisfied, all Liens (as defined in the First Lien Credit Facility) on property of the

23

Debtors with respect to such claims shall automatically, without further action by the Debtors, the Buyer or the lenders or agents under the First Lien Credit Facility, be deemed released, and the such lenders and agents shall take all reasonable actions at the Debtors' sole expense to confirm the removal of any such Liens on the properties and assets of the Debtors or the Buyer securing such claims.

40.     Subsequent to the DIP Payoff, which shall occur at the Closing, the use all remaining cash proceeds from the Sale shall be subject to further orders of this Court.

41.     On the Closing Date, the Debtors shall be authorized and are hereby directed to pay to the Tax Commissioner of DeKalb County, Georgia ("DeKalb") the amount of $1,146.88, in full and complete satisfaction of all claims of DeKalb. Once such claim is paid in full in cash, all liens on property of the Debtors with respect to such claims shall automatically, without further action by the Debtors or the Buyer be deemed released, and DeKalb shall take all reasonable actions to confirm the removal of any such liens on the properties and assets of the Debtors or the Buyer.

### The Carve Out and the Wind Down Amount

42.     Amounts paid by the Buyer to satisfy the Carve Out (as defined in the DIP Facility, as subsequently modified by the Second Forbearance Agreement and Second Forbearance Amendment) shall be free and clear of all liens, claims, interests and encumbrances of all parties other than the claims of the professionals whose fees are included in the Carve Out in the amounts and subject to the conditions set forth in the Second Forbearance Agreement.

43.     Notwithstanding anything contained in the Purchase Agreement to the contrary, the Buyer shall not include the payment of the Wind Down Amount as a portion of the Purchase Price and the Buyer shall make payments on behalf of the Debtors in an amount that

24

shall not exceed the Wind Down Amount. The amount of the Purchase Price shall be reduced by

the Wind Down Amount, and the Buyer shall pay any and all expenses incurred by the Debtors

in connection with the wind-down of the estates, including, but not limited to, costs of

prosecuting litigation, provided that the amount so paid by the Buyer shall not exceed $750,000

in the aggregate. The Buyer's obligations under this decretal paragraph shall constitute an

Assumed Liability for all purposes of the Purchase Agreement. The Buyer shall pay any such

obligations (subject to the cap set forth herein) within three (3) business days of a request made

by the Debtors with respect thereto.

### Additional Provisions

44.    Notwithstanding anything herein to the contrary, neither this Order nor the

sale authorized hereby shall have any limiting or other effect on the claims of Dorel Juvenile

Group, Inc., Cosco Home and Office Products Division ("Cosco") for infringement of U.S.

Patent No. 6,427,805, including the claims for infringement which are pending in the United

States District Court for the Northern District of Illinois, Eastern Division, before the Honorable

Jeffrey Cole as Case No. 06 C 1380. Nothing in this Order shall prejudice Cosco's rights (i) to

pursue its claims of infringement against Debtor Werner Co., Buyer, and any other entity

involved in the manufacture, use, offer to sell, sale, or import of infringing step stools or ladders,

or (ii) to amend or file any proof of claim in this or any superseding bankruptcy case in respect

of such claims.

45.    This Order, the Purchase Agreement and the Ancillary Documents shall be

binding in all respects upon all creditors and equityholders of any of the Debtors, all non-Debtor

parties to the Seller Agreements and Assumed Leases, all successors and assigns of the Debtors

and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other

25

fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Purchase Agreement or the Ancillary Documents shall not be subject to rejection or avoidance under any circumstances.

46.     The Purchase Agreement and the Ancillary Documents may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

47.     At Closing, the First Lien Agent shall assign to Buyer its right to receive the Purchased Assets (subject to the Assumed Liabilities), and Buyer shall accept such assignment from the First Lien Agent and acquire all of Debtors' right, title and interest in and to the Purchased Assets (subject to the Assumed Liabilities).  The First Lien Agent shall distribute the Buyer Equity Consideration ratably to the First Lien Lenders on or as soon as reasonably practicable after the Closing Date.

48.     Any amounts that become payable by the Debtors to Buyer pursuant to the Purchase Agreement or the Ancillary Documents (other than the Expense Reimbursement, the treatment and priority of which is as set forth in the Bidding Procedures Order) shall (a) constitute an allowed administrative claim in each of the Debtors' chapter 11 cases, (b) be paid by the Debtors in the time and manner as provided in the Purchase Agreement without further order of this Court, and (c) shall not be paid out of the Wind-Down Amount or Excluded Assets.

49.     Pursuant to sections 105(a), 363(b) and 503(c) of the Bankruptcy Code, the Debtors are authorized, but not required, to (a) execute and perform their obligations under any Non-Compete Agreement (as defined in the Debtors' motion for an order authorizing the

26

Debtors to implement an incentive plan for certain of the Debtors' senior managers and other executives, dated December 6, 2006 [Docket No. 755] (the "EIP Motion") that was authorized pursuant to the orders approving the EIP Motion so long as such Non-Compete Agreement was executed by the applicable parties no later than April 16, 2007, (b) make the payments to the applicable executives described in the EIP Motion in connection with the Non-Compete Agreements and (c) take such other actions as may be necessary to implement the Non-Compete Agreements, including, without limitation, designing and/or altering the Non-Compete Agreements in any manner necessary to comply with applicable law.

50.    Nothing contained in any order entered in these bankruptcy cases of the Debtors subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Purchase Agreement, the Ancillary Documents or the terms of this Order.

51.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply, is expressly lifted and this Order is immediately effective and enforceable.

52.    The provisions of this Order are nonseverable and mutually dependent.

53.    The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement and the Ancillary Documents are authorized and  approved in their entirety.

54.    To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without

27

further order of the Court (i) to allow the Buyer to give the Debtors any notice provided for in the Purchase Agreement, and (ii) to allow the Buyer to take any and all actions permitted by the Purchase Agreement or the Ancillary Documents.

55.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any Permit relating to the operation of the Purchased Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

56.     The transfer of the Purchased Assets pursuant to the Sale is a transfer pursuant to Section 1146(a) of the Bankruptcy Code, and accordingly, the transfer of the Purchased Assets (including without limitation both real and personal property) to Buyer does not and will not subject the Debtors or Buyer, their affiliates or designees to any liability for any transfer, stamp, sales, use or similar tax or any so called "bulk sale", to the fullest extent permitted by Section 1146(a) of the Bankruptcy Code; provided, however, that the relief in this decretal paragraph shall not relieve the Buyer of the obligation to make any applicable transfer, stamp, sales, use or similar tax or any so called bulk sale payment to the State of Illinois, Department of Revenue.  Each and every federal, state and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Purchased Assets, all without imposition or payment of any stamp tax, transfer tax, or similar tax.

28

065391.1001

57.    The Court retains jurisdiction, even after the closing of these chapter 11 cases, to: (a) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder; (b) protect Buyer, or any of the Purchased Assets, from and against any of the Encumbrances; (c) compel delivery of all Purchased Assets to Buyer; (d) resolve any disputes arising under or related to the Purchase Agreement, the Sale or the Transactions, or Buyer's peaceful use and enjoyment of the Purchased Assets; and (e) adjudicate any action related to the disgorgement of the Buyer Equity Consideration.

Dated: April 25, 2007
       Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY JUDGE

29