# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re                                          :    Chapter 11
                                               :
WERNER HOLDING CO. (DE), INC., et al.,         :    Case No. 06-10578 (KJC)
                                               :
                        Debtors.               :    Jointly Administered
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    Ref. Docket No. 30
```

### ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF ROTHSCHILD INC. AS FINANCIAL ADVISORS AND INVESTMENT BANKERS PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328(a), AND 105(a)

Upon the application (the "Application") of the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors") for an order, pursuant to sections

327(a), 328(a), and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), as

supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Code for the District of Delaware (the "Local Rules"), authorizing the

employment of Rothschild Inc. ("Rothschild") as financial advisors and investment bankers to

the Debtors, to render such services as are more fully set forth in the Application and that certain

engagement letter entered into by the Debtors and Rothschild as of January 23, 2006 (the

"Rothschild Agreement"); and upon the Affidavit of Neil A. Augustine in Support of the

Debtors' Application for Order Authorizing Employment and Retention of Rothschild Inc. as

Financial Advisors and Investment Bankers Pursuant to Bankruptcy Code Sections 327(a),

328(a) and 105(a); and upon review of the limited objections (the "Limited Objections") to the

Application filed by the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee") and the Official Committee of Unsecured Creditors; and due and adequate notice

of the Application having been given; and it appearing that no other or further notice need be

provided; and the Court being satisfied that Rothschild is a "disinterested person" as such term is

defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code; and it

appearing that the relief requested by this Application is in the best interests of these estates,

their creditors, and other parties in interest; and a hearing on the Application having been held on

August 8, 2006; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.       The Application is granted to the extent set forth herein.

2.       The Limited Objections, to the extent not otherwise resolved by this
Order, are hereby overruled and denied.

3.       Capitalized terms used but not otherwise defined herein shall have the
meanings ascribed to such terms in the Application.

4.       Pursuant to sections 327(a), 328(a) and 105(a) of the Bankruptcy Code,
the Debtors are authorized to employ and retain Rothschild as financial advisors and investment
bankers under the terms of the Rothschild Agreement in these chapter 11 cases.

5.       The Debtors are hereby authorized to pay Rothschild's fees and expenses
as set forth in the Rothschild Agreement, which prepetition fees and expenses are not subject to
review and which postpetition fees and expenses shall be subject to: (a) review solely under the
standard of review under section 328(a) of the Bankruptcy Code; and (b) approval by this Court
upon proper application by Rothschild in accordance with the timing and manner prescribed by
the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and
any other applicable orders of this Court.

2

6. Notwithstanding the preceding paragraph, the U.S. Trustee shall retain all rights to object to the Restructuring Fee and M&A Fee on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code; provided, however, that reasonableness shall not be evaluated based on an hourly or length of case based criteria.

7. Notwithstanding any provision in the Application or the Rothschild Agreement to the contrary: (a) the amount payable to Rothschild for both the Restructuring Fee and M&A Fee shall be capped at the greater of: (i) $3 million; and (ii) the amount of the M&A Fee set forth on Exhibit B to the Rothschild Agreement; and (b) Rothschild shall not be paid any Lien Fee or Notes Exchange Fee.

8. Notwithstanding any provision in the Application or the Rothschild Agreement to the contrary, the M&A Fee that may be paid by the Debtors to Rothschild on account of M&A Transactions shall be equal to the product of: (x) the applicable M&A Fee Percentage; and (y) the total Aggregate Consideration received from all M&A Transactions related to the Debtors (it being understood that if there is more than one M&A Transaction, the M&A Fee Percentage for each subsequent transaction shall be computed as though all prior M&A Transactions were consummated concurrently). Notwithstanding any provision in the Application or the Rothschild Agreement to the contrary, the New Indebtedness Fee shall be capped at $1 million and no amount of the New Indebtedness Fee shall be paid before December 31, 2006. Notwithstanding any provision in the Application or the Rothschild Agreement to the contrary, Section 5 of the Rothschild Agreement shall be modified such that the 50% crediting shall commence after Rothschild has been paid Monthly Fees in excess of $900,000.

3

9.      The Debtors are authorized to indemnify Rothschild in accordance with the Rothschild Agreement, but not for any claim arising from, related to, or in connection with Rothschild's postpetition performance of any services other than the services described in the Rothschild Agreement unless such services and indemnification therefor are approved by the Court.

10.     Notwithstanding any provision of the Application or the Rothschild Agreement to the contrary, the Debtors have no obligation to indemnify Rothschild, or provide contribution or reimbursement to Rothschild for any claim or expense that is either:  (a) judicially determined (the determination having become final) to have arisen primarily from Rothschild's gross negligence, willful misconduct, or fraud; or (b) settled prior to a judicial determination as to Rothschild's gross negligence, willful misconduct, or fraud, but determined by this Court, after notice and a hearing, to be a claim or expense for which Rothschild should not receive indemnity, contribution, or reimbursement under the terms of the Application and the Rothschild Agreement, as modified by this Order.

11.     Notwithstanding any provision in the Rothschild Agreement to the contrary, in the event that Rothschild is required to contribute to any losses, claims, liabilities or expenses, any limitation of such contribution in the Rothschild Agreement shall not apply.

12.     If, before the earlier of:  (a) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing these chapter 11 cases, Rothschild believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Rothschild Agreement and the Application (as modified by this Order), including without limitation the advancement of defense costs,

4

Rothschild must file an application therefor in this Court, and the Debtors may not pay any such amounts to Rothschild before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Rothschild for indemnification, contribution, and/or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Rothschild.

13.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
August 11, 2006

Kevin J. Carey
United States Bankruptcy Judge

5

# EXHIBIT B

As of January 23, 2006

Steven P. Richman
President and Chief Executive Officer
Werner Holding Co. (PA), Inc.
93 Werner Road
Greenville, PA 16125



Dear Mr. Richman:

·This letter (the "Agreement") will confirm the terms and conditions of the agreement among Werner Holding Co. (PA), Inc., collectively with its direct and indirect subsidiaries, (the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company.

Section 1    Services to be Rendered   In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below), any series or combination of Transactions or otherwise, Rothschild will perform such services as the Company may request including, but not limited to, the following:

(a)    to the extent deemed desirable by the Company, identify and/or initiate potential Transactions;

(b)    to the extent Rothschild deems necessary, appropriate and feasible, or as the Company may request, review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)    review and analyze the business plans and financial projections prepared by the Company including; but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction, whether in connection with a Plan (as defined below) or otherwise;

(f)    determine a range of values for the Company and any securities that the

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil Augustine
Managing Director
Telephone 212 403-5411
Facsimile 212 403-3734
Email neil.augustine@us.rothschild.com

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 2

Company offers or proposes to offer in connection with a Transaction;

(g)    advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company, whether pursuant to a Plan or otherwise;

(h)    review and analyze any proposals the Company receives from third parties in connection with a Transaction, as appropriate;

(i)    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(j)    advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)    to the extent requested by the Company, assist the Company in raising equity, debt and/or hybrid capital and/or refinancing or amending any of its existing debt facilities;

(l)    with respect to any 3(a)(9) Offer (as defined below), subject to the exemption from registration provided by Section 3(a)(9) of the Securities Act of 1933 (as amended, together with the rules and regulations promulgated thereunder, the "Securities Act"), Rothschild and the Company shall, in consultation with their respective counsel establish guidelines regarding the scope and execution of Rothschild's services hereunder with respect to any 3(a)(9) Offer;

(m)    in the event the Company determines to commence Chapter 11 cases in order to pursue a Transaction, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

(n)    render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company in connection with any of the foregoing.

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 3



As used herein, the term "Transaction" shall mean, collectively, whether pursuant to a plan of reorganization (a "Plan") consummated in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise; (a) any transaction or series of transactions that affects or proposes to affect material amendments to or other material changes in any of the Company's outstanding indebtedness, including, but not limited to any defeasance, redemption, refinancing, extension of maturity (by eighteen months or more with respect to the Company's Senior Subordinated Notes (as defined below)), exchange or repayment of any of the Company's outstanding indebtedness, whether in reliance on the exemption from registration provided under Section 3(a)(9) of the Securities Act (a "3(a)(9) Offer") or otherwise; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple transactions or a series of transactions, of (v) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (w) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company (each, an "M&A Transaction"); (x) any restructuring, reorganization or similar transaction, whether or not pursuant to a Plan; or (y) any raising of new capital, in the form of debt, equity or hybrid securities or (z) any transaction similar to any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 4



<u>Section 2</u>      <u>Information Provided by the Company.</u>

(a)      The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild reasonably deems appropriate to enable Rothschild to render services hereunder (all such information being the "<u>Information</u>"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild. Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically.

(b)      The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission rising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

<u>Section 3</u>      <u>Application for Retention of Rothschild.</u> In the event the Company determines to commence Chapter 11 proceedings in order to pursue a Transaction, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement, *nunc pro tunc* to the later of: (x) the date of this Agreement and (y) the date the Company commences its chapter 11 case, and shall use its reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its reasonable best

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 5



efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Subject to being so retained, Rothschild agrees that during the pendency of any such proceedings, it shall continue its obligations under this Agreement pursuant to the provisions of this Agreement.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any. In so agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Restructuring Fee, the New Indebtedness Fee and the M&A Fee (as each is defined below) are reasonable regardless of the number of hours to be expended by Rothschild's professionals in performance of the services to be provided hereunder.

Section 4    Fees of Rothschild    As compensation for the services rendered hereunder, the Company, and its successors, if any, agree, upon consummation of each Transaction, to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash.

(a)    Commencing as of the date hereof, and whether or not a Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $150,000 per month, for as long as this Agreement is in effect. The initial Monthly Fee shall be pro-

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 6



rated based on the commencement of services as of the date hereof and shall be payable by
the Company upon the execution of this Agreement by each of the parties hereto, and
thereafter the Monthly Fee shall be payable by the Company in advance on the first day of
each month.

(b)    A new indebtedness fee (the "New Indebtedness Fee") equal to one percent
(1.0%) of the gross proceeds raised for financing (including any financing which later
converts into debtor in possession financing), but excluding any financing provided by The
CIT Group or JP Morgan Chase Bank (or any affiliates of either institution) (a "New
Indebtedness Raise"); provided, however, that the New Indebtedness Fee shall not exceed
$2,000,000. The New Indebtedness Fee shall be payable at the later of (i) the date the Lien
Fee is earned or (ii) final court approval of the New Indebtedness Raise in the event such
New Indebtedness Raise is debtor in possession and/or exit financing.

(c)    (i) A First and Second Lien Facility fee (the "Lien Fee") equal to
$1,250,000 payable upon the earlier of (x) the refinancing of all commitments under the
Credit Agreement entered into between the Company and JP Morgan Chase and Citigroup
Global Markets dated as of June 11, 2003, as amended (the "First Lien Facility"), by a
third party or (y) any material amendment to the First Lien Facility, and (ii)(x) the
refinancing of all commitments under the Credit Agreement entered into between the
Company and Credit Suisse First Boston and Morgan Stanley Senior Funding Inc. dated as
of May 10, 2005 (the "Second Lien Facility"), by a third party or (y) any material
amendment to the Second Lien Facility. Whether an amendment to the First Lien Facility
or Second Lien Facility constitutes a "material amendment" shall be determined by the
Company and Rothschild at the time the amendment is effective.

(d)    A Senior Subordinated Notes exchange fee (the "Notes Exchange Fee")
equal to $1,750,000 payable at the closing of any exchange or refinancing transaction with
respect to the Company's 10% Senior Subordinated Notes due November 2007 that results
in the extension of their maturity by at least eighteen months or such other modification as
the Company and Rothschild in good faith agree entitles Rothschild to a Notes Exchange
Fee.

(e)    A restructuring fee (the "Restructuring Fee") of $3,000,000, payable upon
the confirmation and effectiveness of a Plan.

(f)    In the event that the Company consummates an M&A Transaction, the
Company agrees to pay Rothschild a fee equal to the greater of (i) $3,000,000 and (ii) the
amount set forth on Exhibit B annexed hereto (the "M&A Fee"); provided, however, that

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 7

in the event the M&A Transaction primarily involving current equity holders or affiliates of current equity holders investing new money into the Company without Rothschild having earned a Lien Fee and Notes Exchange Fee and consummated prior to the filing of a Bankruptcy Case, then no M&A Fee shall be earned or due and owing. Notwithstanding the foregoing proviso, if current equity holders or affiliates of current equity holders purchase stock or assets of the Company following the commencement of a Bankruptcy Case pursuant to section 363 or other applicable section of the Bankruptcy Code, Rothschild shall be entitled to an M&A Fee in the amount equal to the greater of (i) $3,000,000 and (ii) the amount set forth on Exhibit B.

Section 5    Credit.  Rothschild shall credit fifty percent (50%) of the paid Monthly Fees in excess of $450,000 (the "Monthly Fee Credit") against the Restructuring Fee; provided, that the Monthly Fee Credit shall not exceed the Restructuring Fee. In addition, to the extent not otherwise credited hereunder, the Monthly Fee Credit shall be credited against the New Indebtedness Fee, Lien Fee, Notes Exchange Fee or M&A Fee; provided, that in each case, the Monthly Fee Credit shall not exceed the New Indebtedness Fee, Lien Fee, Notes Exchange Fee or M&A Fee, as applicable.  As set forth above, the New Indebtedness Fee shall not exceed $2.0 million; the Lien Fee, Notes Exchange Fee and Restructuring Fee (which shall be incremental to the New Indebtedness Fee) shall not exceed $3 million in the aggregate and the M&A Fee (which shall be incremental to the New Indebtedness Fee, but not incremental to the Lien Fee and Notes Exchange Fee) shall not exceed the greater of $3 million and the amount set forth on Exhibit B. For avoidance of doubt, Rothschild can only earn the greater of, but not both of (a) the Lien Fee and Notes Exchange Fee; and (b) the M&A Fee.

Section 6    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred · in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Rothschild's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  In the event the Company becomes a debtor and/or a debtor-in-possession in a Chapter 11 case, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 8



persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8   Term.   The term of Rothschild's engagement shall extend until the confirmation and effectiveness of a Plan. This Agreement may be terminated by either the Company or Rothschild after ninety (90) days from the date hereof by providing not less than fifteen (15) days advance notice in writing. If terminated, Rothschild shall be entitled to payment of any fees for any monthly period which are due and owing to Rothschild upon the effective date of termination; however, such amounts will be pro-rated for any incomplete monthly period of service, and Rothschild will be entitled to reimbursement of any and all reasonable expenses described in Section 6. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the New Indebtedness Fee, the Lien Fee, the Notes Exchange Fee, Restructuring Fee and the M&A Fee shall be payable in the event that, in the case of the Restructuring Fee, a Plan or, in the case of the New Indebtedness Fee, the Lien Fee, the Notes Exchange Fee, a Transaction is consummated at anytime prior to the expiration of twelve (12) months after such termination, or a letter of intent or definitive agreement with respect thereto is executed at any time prior to twelve (12) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction or Plan, as the case may be, at any time thereafter).

Section 9   Miscellaneous.

(a)      *Administrative Expense Priority.*  In the event the Company determines to commence Chapter 11 cases in order to pursue a Transaction, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 cases pursuant to one or more financing orders entered by the Bankruptcy Court.

(b)      *Survival, Successors & Assigns.*  Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 9



Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns.

(c)     *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild.

(d)     *Nature of Relationship.*  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(e)     *Required Information.*  Since recently enacted Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(f)     *Public Announcements.*  (i) Rothschild may at its option and expense, after announcement of the Transaction, subject to obtaining the prior written consent of the Company which consent shall not be unreasonably withheld, place announcements and advertisements or otherwise publicize the Transaction in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such Transaction. Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 10



Rothschild's internally generated general marketing or promotional activities, provided such use or display is in the nature of a public record or tombstone announcement in relation to the Transaction.

(g)    *CHOICE OF LAW: JURISDICTION.*  THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY OF (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) IF ROTHSCHILD'S ENGAGEMENT IS APPROVED BY A BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT, THAT COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT MATTHEW A. FELDMAN, C/O WILLKIE FARR & GALLAGHER, LLP, 787 SEVENTH AVENUE, NEW YORK, NEW YORK SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(h)    *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 11



(i)     *Entire Agreement*.   This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(j)     *Authority*.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby.  Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms.  Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(k)     *Counterparts*.  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Page 12



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

Neil A. Augustine
Managing Director

Accepted and Agreed to as of
the date first written above:

WERNER HOLDING CO. (PA), INC..

By: _____
Name: Steven P. Richman
Title: President and CEO

Werner Holding Co. (PA), Inc.
As of January 23, 2006
Exhibit A-1

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including without limitation stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral information provided by an authorized officer of the Company or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction; or (b) otherwise in connection with, arising out of, based upon, or related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party in an arbitration, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any reasonable legal or other fees, disbursements or expenses incurred in connection with this Agreement as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Werner Holding Co. (PA), Inc.
January 23, 2006
Exhibit A-2

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (i) if the Company had actual notice of such Action or (ii) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (b) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that other than provided above, no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for

Werner Holding Co. (PA), Inc.
January 23, 2006
Exhibit A-3

or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

Werner Holding Co. (PA), Inc.
January 23, 2006
Exhibit B-1

## Exhibit B:
## M&A Fee Schedule

(Dollars In Millions)

| Aggregate Consideration[a] | M&A Fee Percentage [b] |
|---|---|
| $100.0 | 1.75% |
| 200.0 | 1.50 |
| 300.0 | 1.25 |
| 400.0 | 1.00 |
| 500.0 | 0.90 |

(a) For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any lease arrangements or put or call agreements) and other properties paid or payable, directly or indirectly in connection with a Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in anticipation of a Transaction or (y) existing on the Company's balance sheet at the time of a Transaction (if such Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Transaction (if such Transaction takes the form of a sale of assets). In the event such Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Transaction). The value of securities

Werner Holding Co. (PA), Inc.
January 23, 2006
Exhibit B-2

that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by Rothschild, provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto. Aggregate Consideration shall be deemed to include the face amount of any indebtedness for borrowed money, including, without limitation, obligations assumed, retired or defeased, directly or indirectly, in connection with, or which survive the closing of, such transaction. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.

(b)   Percentages rounded to two decimal places. The applicable M&A Fee percentage for Aggregate Consideration value amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the M&A Fee Schedule. For Aggregate Consideration value amounts which fall below or above the amounts listed above, the applicable M&A Fee percentage shall be agreed upon by Rothschild and the Company in good faith consistent with the above fee schedule.